AMERICAN STEAM LAUNDRY COMPANY, Respondent, vs. RIVERSIDE PRINTING COMPANY, Appellant.

*May 7—June 1, 1920.*

*Contracts: Agreement to furnish steam to laundry: Duration: Termination: Mutuality: Parol evidence: Reformation of instruments: Trial of issue: Damages: Loss of profits: Proof.*

1. In a contract whereby defendant agreed to furnish steam for plaintiff's laundry, a clause that the steam was to be furnished to plaintiff while in the building occupied by it expressed duration of the contract, not a condition of performance ·of obligations agreed upon; the word "while" expressing the idea of duration when read in connection with the clause immediately following it.

2. The agreement is not void for indefiniteness as to time, though the time for continuance of the contract is not definitely specified, and hence the contract is not terminable at the will of either party.

3. Such agreement to furnish steam at a specified monthly rate obligated plaintiff to pay for the steam at the specified rate so long as it occupied the building, so that defendant could not avoid liability thereon for want of mutuality.

4. Where a contract as written is free from ambiguity when applied to the subject matter of the transaction, parol evidence is not admissible to ascertain and explain its terms.

5. Where defendant's answer alleged that the agreement to furnish steam was limited to the time defendant also occupied its ·premises and that such agreement was, through mutual mistake, omitted from the written contract, defendant was entitled to litigate the issue of right to reformation for mistake.

6. Loss of profits, to be recoverable, must be capable of ascertainment with reasonable certainty, and plaintiff cannot recover for loss of profits by loss of customers, in addition to extra expense for furnishing its own steam, in the absence of evidence that the loss was solely caused by the breach.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

This action was brought by plaintiff to recover damages for alleged breach of contract. Plaintiff claims that there was a written contract between it and defendant by which

defendant agreed to furnish plaintiff with live and exhaust steam for the operation of its laundry. It is plaintiff's contention that the contract provided that defendant should furnish this steam as long as plaintiff occupied certain premises adjoining or near the premises on which defendant conducted its printing business. Defendant claims that the contract required it to furnish the steam only as long as defendant occupied the premises on which it was then conducting its printing business.

The contract was dated March 1, 1911. On April 1, 1914, defendant moved its business from the premises near plaintiff, and thereupon ceased to furnish steam to plaintiff. Plaintiff continued to occupy its laundry premises until the expiration of its lease on December 31, 1915.

Plaintiff claimed damages in its complaint (1) for the amount it expended in preparing and equipping its premises for the use of such steam under the contract; (2) for the amount of the expense of altering its premises and installing its own steam plant after defendant ceased to supply steam; (3) for the amount of increased expense of producing its own steam and operating its laundry therewith; (4) for loss of profits sustained in its business from the time defendant ceased to supply steam to the termination of its lease, December 31, 1915; and (5) for the loss of prospective profits subsequent to December 31, 1915.

Defendant's answer alleged that the contract is void for want of mutuality and consideration except in so far as the same has been executed by the parties; that it was understood between the parties that defendant could not and would not furnish steam for any longer period than during its occupancy of the premises used for its printing business; that it ceased to furnish steam for the reason that it was obliged to move from these premises; that it did so with plaintiff's consent, and that said agreement then terminated by the mutual consent and agreement of the parties; that plaintiff prepared and produced the contract in question and

represented that it correctly evidenced the oral understanding of the parties; that the words "while in the building," etc., were not understood by either party to state or define the period for the continuance of the agreement; that if such words are to be construed as imposing upon defendant the duty of supplying steam as long as plaintiff remained in its premises, such words were included by and through mutual mistake of the parties or by the fraud of the plaintiff and the mistake of defendant; that the contract should be reformed.

The case was tried to the court and a jury. At the close of the testimony the court held that matters respecting the construction and validity of the contract were questions of law for determination by the court and would be taken under advisement, and submitted all of the other issues to the jury.

The jury found in a special verdict that plaintiff did not consent to defendant's ceasing to furnish the steam for its business, nor did it waive its right to be furnished steam by defendant after March 31, 1914; that defendant's failure to furnish the steam caused plaintiff damages by way of loss of profits.

After verdict the court considered the questions which had not been submitted to the jury by special verdict and held that the defendant was liable for breach of contract. The court expressly construed the contract "as obligating the defendant to furnish live and exhaust steam to the plaintiff for its use while, or so long as, the plaintiff used and occupied the building at 210-212 Third street as a steam laundry, namely, until January 1, 1916; that the contract is not void for want of mutuality, but is valid and binding."

Judgment was entered in plaintiff's favor awarding it recovery of the damages fixed by the jury. From this judgment defendant appeals.

For the appellant there was a brief by *N. L. Baker & W. J. Zimmers* of Milwaukee, and oral argument by *Mr. Baker.*

For the respondent there was a brief by *S. M. Williams,* attorney, and *Williams & Stern,* of counsel, all of Milwaukee, and oral argument by *Burdett F. Williams.*

SIEBECKER, J.    It is contended by the defendant that the court erred in holding that the clause in the contract declaring that defendant was to furnish plaintiff steam "while in the building occupied and used by them as a steam laundry, being building numbered rear 210-212 front Third street," defined a period of time for which steam was to be furnished.

The words of this clause are to be construed and understood in their ordinary and common acceptation when applied to the subject in relation to which they are used and the facts and circumstances of the transaction.    The word "while" as here employed clearly expressed duration and not a condition of performance of the obligations agreed upon.    The word "while" expresses the idea of duration when read in connection with the clause immediately following it, which specifies the facts which determine this duration of time, namely, the period of occupancy and use by the plaintiff of its building as a steam laundry.    The terms of this clause, when applied to the subject matter in view of the facts involved in the transaction, indicate that the time of the contract is dependent upon the event of use and occupancy of the building by plaintiff as a laundry.    The omission to specify the time presently definite for the continuance of the contract does not, however, make the contract void for indefiniteness as to time, and hence it is not terminable at the will of either party.    *Superior v. Douglas Co. Tel. Co.* 141 Wis. 363, 122 N. W. 1023; *Treat v. Hiles,* 81 Wis. 280, 50 N. W. 896.

The trial court properly concluded that the contract as written is free from ambiguity when applied to the subject matter of the transaction.    Parol evidence, therefore, was not admissible to ascertain and explain the terms in which it is written.

It is contended that the agreement of the parties is not binding on them for want of mutuality. The terms of the contract are in substance and effect that the defendant, in consideration of the specified payments to be made by plaintiff, "agrees to furnish" to plaintiff "exhaust and live steam for its use while in the building occupied and used" by plaintiff as a steam laundry, "at the rate of $30 per month during the first year and $35 per month or part of a month thereafter." It is also agreed that all work and material required for conveying the steam from defendant's premises to plaintiff's laundry are to be furnished by plaintiff at its cost and expense. It is without dispute that the plaintiff entered upon the execution of the contract by putting in the necessary pipes to conduct the steam from defendant's plant to the laundry and made the required connections to make the steam available in its business. Steam was furnished under contract from April 10, 1911, to April 1, 1914, when defendant moved to another location and discontinued the steam supply. The defendant urges that the plaintiff did no more than promise to pay for the steam when it was furnished, and that the terms of the agreement do not imply that it would take steam as long as it occupied the premises.

As we have above shown, the terms of the contract fix a time during which the steam was to be supplied. The plaintiff promised to put in the necessary piping and connections to enable the defendant to supply the steam for making it available to plaintiff and to pay the price agreed upon. The facts and circumstances involved in the transaction throw light on the meaning of the agreement and are helpful in arriving at the intent of the parties embodied in this writing. Courts are not deprived of the benefit of the conditions in which the parties acted when the contract was executed, but may look into the transaction from the viewpoint of the parties so as to aid them in ascertaining the meaning of the terms of the agreement and apply them to the subject matter it embraces. Considering the agreement

in view of the circumstances shown, it is manifest that from the promises made by the respective parties it was their intention that the obligation assumed by either implied the assumption of the correlative obligation of the other. The terms of this contract recognize that plaintiff was to assume payment of the cost and expense in making the steam available and pay the stipulated price, and that it was to be entitled thereto upon the terms defendant agreed to furnish it for the period fixed in the contract. It is considered that the agreement in its terms, when applied to the transaction the parties were dealing with, shows mutual obligation and makes the contract enforceable by each against the other. *Eastern R. Co. v. Tuteur,* 127 Wis. 382, 105 N. W. 1067; *Walsh v. Myers,* 92 Wis. 397, 66 N. W. 250; *McCall Co. v. Icks,* 107 Wis. 232, 83 N. W. 300; 1 Page, Contracts (2d ed.) sec. 583; 1 Williston, Contracts, § 140.

We think the jury's finding that plaintiff did not before March 31, 1914, consent to defendant's ceasing to furnish steam nor waive its right to have steam furnished thereafter, is amply supported by evidence.

It is alleged in defendant's answer that it was distinctly agreed by the parties that defendant was not to furnish the steam to plaintiff for any longer period than defendant occupied the premises under its lease and its use in conducting its printing business; that such express agreement was, through mutual mistake of the parties, omitted from the written contract; and demanded judgment that the contract be reformed so as to express this agreement of the parties. The record discloses that the trial court refused to receive evidence tending to show that any such agreement had been made and that it was omitted from the contract by mutual mistake of the parties. Our attention has not been directed to anything in the record that this inquiry was not a proper one to be litigated, except that, whenever any evidence relevant and material to this question was sought to be elicited by defendant, objections to its reception

were uniformly sustained by the court. The record shows that efforts to have this question determined at the trial were met by objections in every instance and that no such issues were in fact litigated. True, no specific requests were made asking the trial court to find on this question. This, however, is readily understood when it is borne in mind that all evidence defendant offered on the subject was excluded. An examination of the record convinces us that it was prejudicial error not to litigate this question as tendered by the defendant, and that justice requires that the cause be remanded to the circuit court to hold an inquest on this issue, and that the court determine whether or not defendant is entitled to have the contract reformed as prayed for.

The question of damages as assessed by the jury is founded upon the following questions of the verdict:

"(4) Did the failure of defendant to furnish plaintiff with live and exhaust steam after April 1, 1914, cause plaintiff damage *by way of loss of profits* in 1914 and 1915?

"(5) If your answer to question No. 4 is 'Yes,' then answer this question: What is the amount of plaintiff's damages by way of *loss of profits* in 1914 and 1915 due solely to defendant's failure to furnish live and exhaust steam after April 1, 1914?"

The court instructed the jury in connection with these questions that the burden of proof in the inquiries is on the plaintiff, that their answers must be supported by the preponderance of the credible evidence, and that their answer "as to the extent of *loss of profits* so caused must not rest upon mere speculation or guess, and you will not include any item or items of damages in the way of loss of profits which you find from the evidence were due wholly or in part to any other cause or causes than the defendant's failure to furnish steam." One of the elements for recovery of loss of profits is that they must be capable of ascertainment with reasonable certainty. The evidence in the case partic-

ularizes certain expenses plaintiff incurred by way of furnishing the laundry with steam apparatus and boiler and the expense of conducting the business after their installation, which were charged up in the business accounts as disbursements to be deducted from the income of the business, and thus to ascertain what is termed *loss of profits of the year's business.* It also appears that no separate finding was made by the jury to determine the amount of this class of damage so attributed to the breach of contract from other damages denominated *loss of profits.* A search of the items on which this so-called loss of profits was predicated discloses that loss of customers to the business in 1914 and 1915 was included. It is claimed that this loss was caused by imperfect laundry work due to soot specks. The plaintiff asserts that such specking was due to the fact that the smokestack operated in connection with the new steam boiler to supply steam for the laundry work had to be so located as to cause the soot to enter the laundry. The evidence lacks in definiteness and clearness to show that the loss of customers was solely caused by these conditions of installing the new apparatus and boiler. Nor can we ascertain but that the disbursements were augmented by items not incident to the ordinary conduct of the business and which may have affected the calculation made by the plaintiff in ascertaining its loss of profits. We cannot undertake any detailed examination of the items comprising the plaintiff's business for the two years 1914 and 1915. Under these facts and conditions it cannot be ascertained on what basis the jury acted in assessing the damages as loss of profits. This state of the issues on damages requires that a retrial on the question must be had. The judgment appealed from is reversed, and a new trial awarded on the issues of reformation of the contract and of damages.

*By the Court.*—The judgment is reversed, and the cause remanded to the circuit court for further proceedings in accordance with this opinion.