**WISCONSIN LIQUOR CO., Plaintiff-Appellant,**

v.

**PARK & TILFORD DISTILLERS CORPORATION** and **Affiliated Distillers Brands Corp., Defendants-Appellees.**

No. 12491.

United States Court of Appeals
Seventh Circuit.

May 21, 1959.

Thomas C. McConnell, Philip J. Curtis, Francis J. McConnell, Chicago, Ill., for appellant.

Irwin I. Zatz, Louis M. Mantynband, Henry J. Shames, Chicago, Ill., for appellees.

Before SCHNACKENBERG, HASTINGS and KNOCH, Circuit Judges.

HASTINGS, Circuit Judge.

Appellant, Wisconsin Liquor Co., brought this suit in three counts to recover treble damages for injuries due to alleged antitrust violations and also for damages arising from an alleged breach of contract.

Count I of the original amended complaint named Park & Tilford Distillers Corporation (Park & Tilford) and Affiliated Distillers Brands Corporation (Affiliated) as defendants and alleged that they had entered into an illegal agreement and conspiracy in January of 1955 in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2 to deprive appellant of its distributorship and to monopolize the distribution of Affiliated and Park & Tilford products in the Milwaukee trade area by supplying Bonded Spirits Corporation (Bonded Spirits) with Park & Tilford products at discriminatorily low prices and by granting Bonded Spirits unlawful re-

bates and allowances to the injury of appellant in its relations with its customers and accounts. Park & Tilford was named as sole defendant in Counts II and III. Count II charged a breach of a contract designating appellant exclusive distributor of Park & Tilford products in four counties in the Milwaukee area. Count III set forth that Park & Tilford had violated Sections 2 and 3 of the Robinson-Patman Act, 15 U.S.C.A. §§ 13, 13a, by selling its liquors to Bonded Spirits, a distributor in competition with appellant, at discriminatorily low prices and by granting it unlawful rebates, discounts and allowances with the intent and purpose of destroying appellant as a distributor of Park & Tilford products.

Shortly before the trial, appellant sought leave to file a so-called supplemental complaint alleging that in March, 1958, pursuant to the continuing conspiracy charged in the original complaint, Schenley Industries, Inc. (Schenley) having acquired 90% of the stock of Park & Tilford, effected a statutory merger with Park & Tilford and that the purpose of the acquisition of the stock and merger was to restrain trade and create a monopoly in violation of Sections 1, 2 of the Sherman Act, supra, and Section 7 of the Clayton Act, 15 U.S.C.A. § 18. It was alleged that Schenley sought to eliminate Park & Tilford as an independent company and competitor, to place distributors of Schenley at a competitive advantage over Park & Tilford distributors, thus depriving the latter's distributors, including appellant, of the business of selling Park & Tilford products and to lose (purposely) valuable franchises owned by Park & Tilford for the distribution of certain named imports to the injury of Park & Tilford and its distributors.

Appellees objected to the filing of this supplemental complaint as representing such a variance from the original complaint that they would be prejudiced in the preparation of their case for trial. Leave to file was denied by the trial judge who indicated his reluctance to

try Schenley for a Section 7 violation under a complaint charging a general conspiracy with Schenley as one of the conspirators but not named as a party defendant.

At the close of its case, appellant asked leave to amend its complaint to conform to the evidence. The amendment named Park & Tilford and Affiliated as co-conspirators along with Schenley and Bonded Spirits in the continuing conspiracy described above. The trial court denied such leave indicating that it would not thus "put its stamp of approval that the evidence" conformed to such an amendment. It did, however, grant leave to file the amendment "without any provision that it does conform to the evidence."

Subsequently, on motion by appellees made at the close of appellant's evidence, the trial court directed a verdict as to Count I on the ground that there was no substantial evidence of a conspiracy. Park & Tilford also moved for a directed verdict as to Count III and this was acceded to by appellant. Count III was thereupon dismissed with prejudice and is not involved in this appeal. The trial court overruled a similar motion by Park & Tilford on Count II and the case went to the jury on the breach of contract question. The jury returned a verdict on this count in favor of appellant and assessed damages at $100,000. Park & Tilford then moved for judgment notwithstanding the verdict and in the alternative for a new trial. The trial court granted the motion for judgment n. o. v. on the ground that there was no substantial evidence of any loss suffered by appellant through the breach of contract; and, in the alternative, granted the motion for a new trial.

[1, 2] We have carefully considered the record and, having viewed the evidence on the antitrust issue raised in Count I in the light most favorable to appellant as we must,[1] have been unable to find any evidence of a conspiracy which would have required the trial judge to send this question to the jury. In presenting its case, appellant departed completely from its original allegations charging a conspiracy on the part of Affiliated and Park & Tilford to sell to Bonded Spirits at discriminatory prices and to grant it rebates, discounts and allowances; and, instead, sought to establish the existence of a conspiracy, of which Schenley was allegedly the guiding light, to put an end to Park & Tilford as an independent company and competitor of Schenley, and to accord Schenley distributors a competitive advantage over the then existing Park & Tilford distributors.

There was testimony to the effect that in the fall of 1954 Schenley opened negotiations with Arthur D. Schulte, president of Park & Tilford, for the purchase of his holdings in that company. On June 15 of that year, appellant had entered into the contract as exclusive distributor for Park & Tilford in the Milwaukee area, replacing Bonded Spirits as such distributor. Appellant's sales manager testified that one of the chief reasons for appellant's acceptance of the distributorship contract was the fact that Park & Tilford had a franchise to distribute a number of well-known foreign brands which it claimed was a tremendous sales stimulant. The Schulte holdings in Park & Tilford were sold to Schenley on December 31, 1954 and constituted a controlling stock interest in that company. Schulte testified that just prior to the sale he had expressed doubts to Ralph Heymsfeld, vice president of Schenley, whether Distillers Company Limited, the owner of Vat 69, one of im-

---

1. "It is well settled that on a motion for a directed verdict or on motion for judgment n. o. v. based on such motion, the evidence must be considered in the light most favorable to the party against whom the directed verdict or judgment n. o. v. is asked, that any conflict in evidence must be resolved in his favor and that every conclusion or inference that can be legitimately drawn therefrom in his behalf must be drawn." Burcham v. J. P. Stevens Company, 4 Cir., 1954, 209 F.2d 35, 37. See also American Cyanamid Co. v. Fields, 4 Cir., 1953, 204 F.2d 151, 153.

ports referred to above, would agree to continue the franchise with Park & Tilford if the sale were made because of "DCL policy * * * not to permit more than one of its major brands to be distributed by the same importer * * *." Heymsfeld testified that Schulte had informed him that "he [Schulte] would give no representations and made no warranties that foreign sellers would continue those contracts in effect after they had terminated." The record shows that, after the purchase of Schulte's holdings by Schenley, the imports were eventually terminated as follows: Vat 69 and Booth's Gin on December 31, 1955, Harvey's Wines on December 31, 1956 and Heidsieck Champagnes on October 15, 1956.

The record further shows that Schenley appointed one Stanley L. Brown president of Park & Tilford shortly after it acquired the controlling interest in that company. Brown was under contract directly to Schenley. It is also apparent that from the time Schenley acquired its controlling interest in Park & Tilford the possibility of a merger was considered.

During 1956, Park & Tilford experienced losses of over $3,000,000. Brown, in the annual report to the stockholders, indicated that "the loss of our [Park & Tilford's] import distributorships has been the main cause of the serious drop in sales volume. Also relating to the loss of our imports was its subsequent effect in weakening our distributor relationships."

Appellant had terminated its distributorship contract with Park & Tilford in August of 1955. The reasons later voiced for such termination were the fact that part of its exclusive territory had been granted to Bonded Spirits and that it was becoming increasingly clear that Park & Tilford would lose its import distributorships.

Park & Tilford was merged with Schenley in April of 1958, which was more than two and one-half years after appellant terminated its distributorship arrangement and almost two years after the filing of the original complaint in this suit.

■ There was no evidence that appellant was ever refused Park & Tilford products, including the imports, under its distributorship agreement. Park & Tilford continued to compete with other sellers of alcoholic beverages and to supply its distributors with domestic whiskies and imported brands long after Schenley's acquisition of the Schulte shares. There was a complete lack of evidence of any course of conduct or dealing on the part of the alleged conspirators resulting in adverse effect on competition in the market area involved. We are, of course, mindful that proof of a formal or specific agreement is not necessary to establish the existence of a conspiracy. American Tobacco Co. v. United States, 1945, 328 U.S. 781, 809–810, 66 S.Ct. 1125, 90 L.Ed. 1575; Interstate Circuit, Inc. v. United States, 1939, 306 U.S. 208, 226, 59 S.Ct. 467, 83 L.Ed. 610. However, we are further impressed in this case with the complete absence of proof of the existence of any common scheme or purpose knowingly participated in by the alleged conspirators, and we hold that the trial court properly directed a verdict on Count I in favor of appellees (defendants) at the close of plaintiff's case.

Concerning the breach of contract count against Park & Tilford, the record shows that in March of 1955, Bonded Spirits, one of the distributors which appellant had replaced under its agreement with Park & Tilford, was reappointed as a Park & Tilford distributor with its territory including Waukesha county which was part of appellant's exclusive territory.[2] The formal agree-

---

2. Appellant experienced some difficulties with Bonded Spirits shortly after assuming its duties under the distributorship contract due to the fact that Bonded Spirits had an inventory of Park & Til-

ford products which it refused to surrender and continued to sell at prices undercutting appellant. This inventory "dried up" and appellant admittedly ex-

ment between Park & Tilford and Bonded Spirits was executed on April 26, 1955 and, under its terms, Bonded Spirits could have sold anywhere in appellant's territory. There is some evidence that Bonded Spirits began to sell in appellant's territory in May, 1955. Brown testified that he had an oral agreement with Bonded Spirits that they were not to sell in Milwaukee. In August, 1955, appellant requested that Bonded Spirits be terminated and received assurances from Brown that this would be done. A letter terminating Bonded Spirits was sent by registered mail on August 10, 1955 and received by Bonded Spirits on August 12, 1955. About one week later, however, the president of appellant decided to terminate its distributorship arrangement with Park & Tilford and so informed the regional sales manager of that company.

The distributorship agreement provided for termination by either party upon ninety days notice with or without cause. The agreement also stated that no change in its provisions would be binding without the prior consent of both parties.

■ We agree with the trial court that Park & Tilford committed a flagrant breach of its agreement with appellant. However, we must also agree with the trial court that appellant failed to produce any credible evidence on the question of losses incurred as a result of such breach; and we hold that the trial court did not err in granting Park & Tilford's motion for judgment on Count II notwithstanding the verdict. In reaching this conclusion we have, as is required of us, considered the evidence in the light most favorable to appellant.[3]

■■ There was evidence introduced on the issue of damages to show that appellant had sustained a loss of slightly more than $3,000 through a sale of a part of the Park & Tilford inventory that was left with it after it terminated

its distributorship. Appellant admitted, however, that it had made a profit on other parts of the inventory but introduced no evidence to show what those profits were. There was, therefore, no evidence as to whether there was a loss on the entire inventory. We do not understand appellant's argument that it could claim a loss on certain designated items in the inventory which it sold at a loss after the termination of the contract. The only other evidence on the question of damages was testimony by one of appellant's officers that during the twelve month period from June 15, 1954 to June 30, 1955 (the first year under the distributorship contract) its books showed gross sales of Park & Tilford products amounting to $347,217.50 with profits (after taxes) of $45,289.24. This witness testified that, absent interference arising from the breach of contract, appellant would have doubled such sales and profits. This testimony has no support in the record since there is no competent evidence of loss of customers or sales and could certainly be no basis for the assessment of damages. Loss of profits is a proper measure of damages in Wisconsin, but the evidence must furnish some basis on which profit may be computed with reasonable certainty. Lieberthal v. Glens Falls Indemnity Co., 7 Cir., 1949, 174 F.2d 638, 640; Paramount Fuel Co. v. Fuerst, 199 Wis. 188, 191, 225 N.W. 727; American Steam Laundry Co. v. Riverside Printing Co., 1920, 171 Wis. 644, 650, 177 N.W. 852, 854. Recovery of an alleged loss of profits cannot be had on the basis of pure guesswork and speculative evidence as to the existence and extent of such losses. See Fireside Marshmallow Co. v. Frank Quinlan Construction Co., 8 Cir., 1954, 213 F.2d 16, 19. Our holding sustaining the action of the trial court in granting the motion for judgment n. o. v. makes it unnecessary to consider the question raised with reference to the al-

perienced success under its contract from September, 1954, through February, 1955.

3. Supra note 1.

ternative order granting a new trial as to Count II.

Appellant also appeals from judgment orders entered by the trial court on February 4, 1958 and September 22, 1958 in favor of Park & Tilford on its counterclaim for money alleged due it for merchandise sold to appellant. We have taken under advisement Park & Tilford's motion to dismiss this portion of the appeal in this case. Appellant admitted liability as to the entire amount of the counterclaim ($89,140.24) but claimed that it was entitled to credits of $15,798.22. The trial court entered a summary judgment order on February 4, 1958 in favor of Park & Tilford for the amount of its claim, plus interest, and less $15,798.22, as to which latter amount the order read:

"[T]his Court reserve[s] jurisdiction to enter judgment upon the balance of $15,798.22 undisputably due to Park & Tilford * * *."

Appellant thereupon moved for a stay of execution of this order, under Rule 62(h), F.R.Civ.P., 28 U.S.C.A., on the ground that there was a substantial question whether it would ultimately be indebted to Park & Tilford in any amount because of the damages alleged due it under Counts II and III of its complaint. The trial court agreed to the stay pending trial on the issues raised in appellant's complaint "upon the condition that plaintiff does, in open Court, waive all rights of appeal from this order."

On September 22, 1958, the trial court entered a judgment order in favor of Park & Tilford for $14,709.61 of the remaining $15,798.22 due Park & Tilford for merchandise sold to appellant, thus allowing offsets to appellant of some $1000. All other credits originally claimed by appellant were waived or abandoned.

Park & Tilford has moved this court to dismiss the appeal from these two orders on the ground that appellant waived his rights of appeal from the or-

der of February 4, 1958 and agreed to the entry of the order of September 22, 1958. Appellant contends that the trial court's order of February 4, 1958 was not a final order since it purported to enter summary judgment on only *part* of a claim, and cites Biggins v. Oltmer Iron Works, 7 Cir., 1946, 154 F.2d 214 in support of its position. We are impressed, however, with the fact that appellant treated that order as final by its motion for a stay of execution under Rule 62(h), F.R.Civ.P., 28 U.S.C.A., which provides:

"When a court has ordered a final judgment on some but not all of the claims presented in the action under the conditions stated in Rule 54(b), the court may stay enforcement of that judgment until the entering of a subsequent judgment or judgments * * *."

If the stay of execution had not been granted, appellant would have had an appeal at that time even under the rationale of the Biggins case.

The trial court in the proper exercise of its discretion and with an express finding that there was no just reason for delay, entered judgment for Park & Tilford on its counterclaim. Rule 54(b), F.R.Civ.P., 28 U.S.C.A.; Sears, Roebuck & Co. v. Mackey, 1956, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297. Since appellant thereupon, in open court, waived its rights of appeal from that order, we must grant Park & Tilford's motion to dismiss that part of the appeal and also the motion to dismiss the appeal from the judgment order of September 22, 1958 which was entered by the court *as agreed to by the parties*. We deny, however, the request by Park & Tilford for damages under Rule 26(a) of this court. 28 U.S.C.A.

It is ordered that that portion of the appeal taken from the orders of February 4, 1958 and September 22, 1958 be dismissed, and the judgment of the district court is otherwise

Affirmed.