Alfred C. ROSERA and Shirley Rosera, Plaintiffs,

v.

INTERNATIONAL HARVESTER COMPANY and Dart Transit Company, Defendants.

No. 81–C–1463.

United States District Court, E.D. Wisconsin.

Jan. 3, 1986.

Frank R. Terschan, Frisch, Dudek & Slattery, Milwaukee, Wis., for plaintiffs.

Timothy J. McDermott, Whyte & Hirschboeck, Milwaukee, Wis., for Intern. Harvester Co.

Lawrence M. Shindell, Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis., for Dart Transit Co.

## MEMORANDUM AND ORDER

WARREN, District Judge.

### BACKGROUND

This civil action was tried to an eight-member jury, including alternate, over a two-week period beginning on March 4, 1985. On March 19, 1985, following one day of deliberation, the jury returned a verdict of $2,398,150.32 in favor of the plaintiffs, Alfred C. and Shirley Rosera, and against the defendants, International Harvester Company and Dart Transit Company. Among other things, the jury found International Harvester Company 75% at fault for the plaintiffs' damages and assigned the remaining 25% liability to Dart Transit Company.

Significantly, the jury determined that neither Alfred C. Rosera nor his employer, Schneider Transport Company—not joined as a party to this action by virtue of a previous award made pursuant to the Wisconsin Worker's Compensation Act—were responsible to any extent for the injuries suffered by the plaintiffs. Based on the jury's findings, the Clerk of Court for the Eastern District of Wisconsin entered an appropriate judgment on March 20, 1985.

Presently before the Court in this matter are the pending motions of defendant International Harvester Company for the entry of judgment notwithstanding the verdict, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, or, in the alternative, for a new trial, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure.[1] The several issues raised by the defendant's motions have been extensively and vociferously argued by the parties to this lawsuit, both in their respective memoranda of law, submitted to the Court in support of their positions, and during the course of oral argument heard on May 29, 1985.

The Court has carefully reviewed the parties' briefs and considered at some length the merits of the two motions presented therein and argued orally several months ago. In this undertaking, the Court has also reviewed with care its notes taken during the course of the two-week trial in this matter, all in the context of the well-established standards for review under Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure. Based on this analysis, the Court concludes, for the reasons set forth below, that while the movant is not entitled to the entry of judgment notwithstanding the verdict based on the evidence presented, it should be granted a new trial on all issues.

### Rule 50(b) and the Motion for Judgment Notwithstanding the Verdict

Rule 50(b) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

1. Co-defendant Dart Transit Company had also filed motions in the alternative for judgment notwithstanding the verdict and for a new trial—motions that, while similar in many respects to those of International Harvester Company, nonetheless presented several substantive issues not argued by the present movant. Although Dart Transit Company's motions were fully briefed and argued, the plaintiff and this defendant have since notified the Court that all claims between them have been settled, thus rendering moot the movant's post-trial petitions. Accordingly, they will be denied.

Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed....

Among the Seventh Circuit's most recent codifications of the touchstones to be applied by the trial court in ruling on a motion for judgment notwithstanding the verdict is the one found in *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210 (7th Cir.1985), as follows:

... The standard ... is whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed. *See, e.g., Syvock v. Milwaukee Boiler Mfg. Co., Inc.*, 665

With today's rendition of its order disposing of the outstanding motions of International Harvester Company, however, the Court is in a position to execute the proposed stipulation and order memorializing the settlement between the plaintiffs and defendant Dart Transit Company, pursuant to Wis.Stat. § 102.29 (1984). Of course, the Court's decision with respect to the post-trial motions of defendant International Harvester Company in no sense affects or supersedes the stipulated settlement.

F.2d 149, 153 (7th Cir.1981). Any conflicts in the evidence must be resolved in favor of the resisting party, and every permissible inference from the evidence must be resolved in favor of the party resisting the motion. *Wisconsin Liquor Co. v. Park & Tilford Distilers Corp.,* 267 F.2d 928, 930 n. 1 (7th Cir.1959). However, a mere scintilla of evidence will not support a verdict and an entry of judgment n.o.v. would be proper. *Gunning v. Colley,* 281 U.S. 90, 94 [50 S.Ct. 231, 233, 74 L.Ed. 720] (1930); *La Montagne,* 750 F.2d [1405] at 1410 [ (7th Cir. 1984) ]. In other words, if there is insufficient evidence upon which a reasonable person could properly base a verdict, entry of judgment n.o.v. is appropriate. *See La Montagne,* 750 F.2d at 1410.

Similarly, in *Estate of Clyde Davis v. Marguerite Johnson,* 745 F.2d 1066, 1070 (7th Cir.1984), the Court of Appeals observed that the standard is a demanding one: "The motion should be denied where the evidence ... is such that [people] in a fair and impartial exercise of their judgment may reach different conclusions." Under this exacting approach, "there would perhaps not be many cases in which [the appeals court] could conclude that a jury behaved irrationally." *McKinley v. Trattles,* 732 F.2d 1320, 1323–1324 (7th Cir.1984).

▪ It is generally held that a jury's verdict may be vitiated only if manifest injustice will otherwise result; in this regard, the trial judge may not substitute his or her own judgment for that of the jury merely because he or she may have reached a different conclusion. *Southwestern Pennsylvania Transportation Authority v. Transit Casualty Company,* 412 F.Supp. 839, 842 (E.D.Pa.1976); *cf., Ries v. Sanders,* 34 F.R.D. 468, 470 (N.D.Miss. 1964) ("... [T]he fact that the court may feel that the testimony is unworthy of credit is not a proper ground for granting judgment notwithstanding the verdict for the question of credibility of witnesses is within the jury's sole province"). Rather, the Court must find as a matter of law that the record does not contain a sufficient factual foundation upon which the verdict might be

justified and that, without weighing the evidence, there can be but one reasonable conclusion as to the proper judgment. *Miceli v. Interressantskapet Sea Transport,* 413 F.Supp. 776, 779 (S.D.N.Y.1976); *Marder v. Conweb Corporation,* 75 F.R.D. 48, 54 (E.D.Pa.1977).

▪ Finally, it is well-established that a necessary prerequisite to any Rule 50(b) petition is a motion for a directed verdict pursuant to Rule 50(a) made at the close of all of the evidence. *McNulty v. Borden, Inc.,* 542 F.Supp. 655, 657 (E.D.Pa.1982); *Moran v. Raymond Corporation,* 484 F.2d 1008, 1014 (7th Cir.1973), *cert. denied,* 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974). In fact, if the plaintiff fails to move for a directed verdict during the course of the trial, that party's request for judgment notwithstanding the verdict is untimely and of no legal effect. *Williams v. Fenix & Scisson, Inc.,* 608 F.2d 1205, 1207 (9th Cir.1979); *cf., Geldermann & Company, Inc. v. R.A. Hartely & Son, Inc.,* 543 F.Supp. 1062, 1062–1063 (N.D.Ill. 1982) (... [A] motion for j.n.o.v. cannot be made unless a motion for directed verdict was made by the moving party at the close of all the evidence").

▪ In the present case, the record accurately reflects that counsel for defendant International Harvester petitioned the Court for a directed verdict at the close of the plaintiffs' case and again upon the conclusion of all evidence; because the Court took these motions under advisement, the central issue raised by this defendant's motion for judgment notwithstanding the verdict is now properly before it. That central issue is, simply stated, whether the evidence with respect to the condition of the subject Transtar II vehicle falls so clearly and convincingly in the defendant's favor that the jury's determination to the contrary must be discarded as wholly unsupported and a finding of nonliability made as a matter of law. Under the exacting standards articulated above for Rule 50(b) motions, this Court simply cannot conclude that there is such a wholesale lack of evi-

dence to support the jury's factual assessments to justify overturning its verdict.

To be sure, the evidence did establish that International Harvester Company sold an incomplete vehicle to Schneider Transport—a vehicle intended to be customized somewhat to meet the eventual user's specific needs. In fact, it appears that Schneider Transport did arrange for the installation of the critical fifth wheel and of certain safety features—among them, a deckplate over the framerails and fire extinguishers, flares, and fuses. What Schneider Transport apparently did not do—and what the present movant points to in support of its position that it cannot be held liable as a matter of law—is to follow certain recommended practices of the American Trucking Association that all trailers be equipped with gladhand and electrical connections in a very low position on the extreme driver's side of the front trailer wall. Instead, these features were located toward the center of the trailer, making access from the ground impossible.

Under the defendant's theory, Schneider Transport's decision not to follow the recommended design specifications was the precipitating cause of the principal plaintiff's accident since, had the critical connections been positioned where suggested, he would not have been prompted to climb into the catwalk area in the first place but instead could have remained on the ground to cure the electrical problem he had identified. The movant summarizes its position this way:

> There was not a scintilla of evidence offered by plaintiffs that International Harvester knew that Schneider had not complied with the Maintenance Council's 1975 Recommended Practice for trailer design, or that Schneider's fleet was comprised of trailers that had gladhand and electrical connections located in positions on the trailers other than that prescribed by the Recommended Practice. International Harvester, as a manufacturer of an incomplete tractor unit, had every right to assume that Schneider would follow the 1975 Recommended

Practice in equipping its trailers. If Schneider had done so, Mr. Rosera would have made his inspection from the ground. It would have been totally unnecessary for International Harvester to place a light on the rear wall of the cab, put continuous decking across the catwalk area, or make the other modifications plaintiffs claim were necessary....

> Nonetheless, Questions 1 through 4 of the Special Verdict, to which International Harvester objected, erroneously allowed the jury to impose the completed manufacturing duty on International Harvester. There simply was no basis as a matter of law for the jury to be allowed that choice because International Harvester delivered incomplete units to Schneider, knowing that before the units could be put into use they would necessarily be substantially modified by Schneider. Schneider alone determined what those modifications would be. International Harvester had no control over them. As a matter of law, therefore, the verdict must be vacated.

*Brief of International Harvester Company In Support of Post-Trial Motions* at 5, 6 (April 15, 1985).

While the Court is not entirely unsympathetic to the movant's position, it does find that the argument suffers under several flaws, principal among them, that it fails to impugn the legitimacy of the jury's apparent conclusion that International Harvester Company was negligent in the fundamental design and manufacture of the Transtar II; in this regard, the jury presumably concluded, among other things, that the omission of a light and of handholds on the rear of the tractor, the low placement of the all-important hose connections, and the incorporation of a gap in the tractor-trailer grating work surface were all causative forces leading, in some measure, to the principal plaintiff's accident. Perhaps most significantly, the plaintiffs produced both expert and lay testimony that the use of the Transtar II vehicle in the manner in which it was being used by Alfred C. Rosera at the time of his fall was entirely foreseeable by the original manu-

facturer; from this evidence alone, the jury might reasonably have imputed to International Harvester, as it apparently did, some responsibility for the accident.

Moreover, to the extent that this defendant's "incomplete vehicle" doctrine moves against an assignment of strict liability, the Court is equally unpersuaded that the jury's findings must be rejected out of hand as completely baseless, as it must do if the Rule 50(b) request is to be granted. While there is little doubt that Schneider Transport did, as the movant argues, effectively create the very work environment in which the accident took place, it is not unreasonable to conclude from the evidence that, with respect to that area in which the fall actually began—that is, between the back of the tractor to the front of the trailer—no significant, if any, environmental changes were anticipated or made. As the plaintiffs conclude:

> The jury found that this area was defective and unreasonably dangerous and the mere fact that International Harvester had sent its tractor out with some unrelated, unfinished aspects cannot relieve it from its safety responsibilities in the areas involved in this accident.

*Brief of Alfred C. and Shirley Rosera In Opposition To Post-Trial Motions* at 11 (April 29, 1985).

Although the Court, in quoting approvingly from plaintiffs' memorandum, does not—and, indeed, need not—embrace fully the invocation of the theory of nondelegable duties discussed therein—or, for that matter, the movant's apparent rejection of its application to the present circumstances in its reply brief—it does find sufficient support in the testimony of the plaintiffs' lay and expert witnesses for the jury's assessment of some fault for the accident upon the moving defendant. Stated differently, the Court cannot conclude as a matter of law that the plaintiffs have so wholly failed to adduce sufficient facts to justify the verdict that it must be overturned. Accordingly, the motion for judgment notwithstanding the verdict, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, will be denied.

### Rule 59(a) and the Motion for a New Trial

Of course, the Court's denial of the defendant's Rule 50(b) petition is not dispositive of its companion request for a new trial. Rule 59(a) of the Federal Rules of Civil Procedure establishes the broad power of the trial court judge to grant a new trial "to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." It is generally held that a motion for a new trial is addressed to the sound discretion of the Court and is properly granted if it will effect substantial justice; in this regard, the Court has the inherent right, if it believes that a fair trial has not been had, to set aside the jury's verdict and order a new trial. *Cecil Corley Motor Company v. General Motors Corporation*, 380 F.Supp. 819, 859 (M.D.Tenn.1974); cf., *Kaufman v. Atlantic Greyhound Corporation*, 41 F.Supp. 252, 254 (W.D.W.Va.1941) (offensive verdict set aside and new trial granted to prevent a miscarriage of justice).

In deciding whether to reopen an action, the Court, in the exercise of its discretion, must balance the need for prompt and efficient handling of litigation in federal courts against the attainment of a just resolution of the particular dispute at hand. *Bell Telephone Laboratories, Inc. v. Hughes Aircraft Company*, 73 F.R.D. 16, 22 (D.Del.1976), aff'd, 564 F.2d 654 (3d Cir.1977), cert. denied, 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978); cf., *Browder v. Director, Department of Corrections*, 434 U.S. 257, 271, 98 S.Ct. 556, 564, 54 L.Ed.2d 521 (1978) (Rule 59 is "based on interest in speedy disposition and finality"). In this context, a motion brought under Rule 59(a) is not merely intended to secure a forum for the relitigation of old matters or to afford the parties the opportunity to present the case

under new theories; instead, the motion is a device properly used to correct manifest errors of law or fact or to present newly discovered evidence. *Evans, Inc. v. Tiffany & Company,* 416 F.Supp. 224, 244 (N.D. Ill.1976); *Illinois Central Gulf Railroad Company v. Tabor Grain Company,* 488 F.Supp. 110, 122 (N.D.Ill.1980).

■ Among other purposes, Rule 59(a) is properly invoked by the trial court to grant a new trial on the grounds that the jury's verdict is contrary to the clear weight of the evidence adduced at trial. *Lincoln Carpet Mills, Inc. v. Singer Company,* 549 F.2d 80, 82 (8th Cir.1977); *cf., Sandlin v. Pearsall,* 427 F.Supp. 494, 496 (E.D.Tenn. 1976) (where jury has plainly disregarded credible evidence, "the duty arises for the trial judge to check the jury's power to render a final and binding verdict ...."). In particular, the trial judge may reasonably justify the grant of a new trial on the grounds that the verdict is clearly excessive or the result of passion or prejudice. *Quachita National Bank v. Tosco Corporation,* 686 F.2d 1291, 1294 (8th Cir.1982); *General Foam Fabricators, Inc. v. Tenneco Chemicals, Inc.,* 695 F.2d 281, 288 (7th Cir.1982).

■ Finally, the Court's decision to grant or deny a motion for a new trial will not be disturbed on appeal absent a showing of clear abuse of discretion; three factors typically used to determine whether such an abuse has, in fact occurred, are (1) deference to the trial judge, who has had an opportunity to observe the witnesses and to consider all the evidence in the context of a living trial rather than upon a cold record; (2) deference to the jury's determination of the weight of the evidence and the quantum of damages; and (3) the constitutional allocation to juries of questions of fact. *United States v. Horton,* 622 F.2d 144, 147 (5th Cir.1980); *cf., Harris v. Chanclor,* 537 F.2d 203, 207 (5th Cir.1976) (holding that "all the factors underlying the review of a ruling on a new trial motion press in the direction of leaving the trial judge's ruling undisturbed").

In support of its pending petition for a new trial, defendant International Harvester Company contends first, that the jury's assessment of liability was contrary to the great weight of the evidence and, in this context, argues principally that the objective evidence—including the post-fall condition of the gladhand air connection, a slip mark on the rear portion of the full tank, the damage to the truck operated by the Dart Transit Company driver, and the physics of human movement—along with the principal plaintiff's post-fall statements and accounts of the incident all suggest that the accident did not occur as the plaintiffs maintain. In a related fashion, the movant also contends that the verdict as rendered reflects the jury's wholesale failure to consider Alfred C. Rosera's own contributory negligence, as arguably evidenced by his operation of the Transtar II vehicle while fatigued and under the influence of two powerful prescription drugs; his purported failure to make a proper attachment of the electrical lines to the trailer; his decision to pull his vehicle to the side of the road rather than proceed to a nearby exit and, thereafter, his suggested failure to park the unit as far off the road and on the shoulder as possible; his apparent failure to equip himself with a working flashlight for the trip; and, finally, his creation of an unnecessary risk of injury by stepping over the coiled hoses in the dark of night.

Moreover, the movant points to the jury's finding of no liability on the part of the employer, Schneider Transport, as a sure sign of inattentiveness to the clear weight of the evidence. Finally, in what is perhaps its only purely legal argument, the movant contends that a new trial is justified on the grounds that the Court erred in permitting the introduction of certain facially-hearsay testimony regarding the principal plaintiff's alleged prior consistent statements about the nature of the accident.

Yet most significant from the Court's perspective is the defendant's second, principal argument, attacking not the allocation of liability among the several players to

this action but the size and nature of the damages award made by the jury—an award totalling $2,398,150.32. Relying in large part upon the admonitions of the Court of Appeals in *Stoleson v. United States*, 708 F.2d 1217 (7th Cir.1983), regarding the trial court's evaluation of awards for claims of mental or psychological damage, the present movant suggests that Alfred C. Rosera's pre-accident psychiatric problem, history of exaggerating physical ailments, anxiety over the very result of this litigation, and inability to establish some recognizable causal link between the accident and his present schizophrenic-type condition were all either disregarded or improperly addressed by the jury in reaching its 2.3 million-dollar verdict. As a result, the awards of 1.3 million dollars for future earnings loss, of $120,-000.00 for future psychiatric, medical expenses, and of $300,000.00 for loss of consortium, among the other figures derived by the jury are wholly inconsistent with the evidence adduced at trial and reasonable extrapolations made therefrom, or so International Harvester Company contends. Accordingly, this party now seeks a new trial, if only to correct what it characterizes as a gross miscarriage of justice in the determination of damages.

Predictably, the plaintiffs take strong exception to the several positions adopted and argued by the movant. First, they describe the defendant's contention with respect to the precise circumstances of the accident as nothing more than a theory—a theory based on conjecture, speculation, wholesale leaps of faith, but in the end, no solid evidence in the record. As a footnote, the plaintiffs also direct the Court's attention to the testimony of the eyewitness to the accident, Allen Olson, the Dart Transit truck driver, whose account arguably supports Alfred C. Rosera's own description of his fall. The plaintiffs summarize their position effectively as follows:

> The jury was present to weigh the credibility of all of the evidence as presented, as well as International Harvester's attempt to take small items out of context and twist them into a shape

they simply did not fit. It is far more likely that the jury believed that it was the defendant, International Harvester, who was putting together an after-event story based upon speculation and no proof. Everyone in the courtroom was probably wondering: if the McDermott Theory was correct, where were the witnesses to say that this was the way it had happened, or even a *witness* (not just argument) to say that it *might* have happened this way? Where were the truck's skid marks? Why did the only eyewitness, Mr. Olson, support Mr. Rosera's testimony? If Mr. Rosera was on the tank, why did Mr. Olson, closely aligned with an adverse party, say he was *not* there? As it was, the only *evidence* that the jury had to work with, including an eyewitness report, proved that the accident happened exactly as Mr. Rosera described it. The McDermott Theory was shown to be just a speculative story which the jury properly rejected.

*Brief Of Plaintiffs In Opposition To Post-Trial Motions* at 17 (April 29, 1985).

Similarly, the plaintiffs dismiss the movant's proffered indicia of Alfred C. Rosera's own contributory negligence as wholly unsupported by any substantive testimony or physical evidence made a part of the record at trial and suggest, as before, that they are—to mix metaphors—only red herrings weaved into a sorrowfully incomplete fabric. Furthermore, the plaintiffs describe the jury's treatment of Schneider Transport as wholly consistent with defense counsel's purported request that no liability be assigned to this employer at all. They also maintain that the hearsay rule pursuant to which the Court permitted testimony relating Alfred C. Rosera's prior consistent statements was properly invoked and, accordingly, that no new trial order should issue based on a rescission of that evidentiary ruling.

Finally, and again most significantly, the plaintiffs insist that the damages award—as a whole and in its composite parts—is not perverse or otherwise infected by passion or prejudice. Instead, they note that

the $1.3 million figure for loss of earning capacity is actually $200,000.00 less than that requested by counsel in closing argument; that the holding of and touchstones articulated in *Stoleson v. United States*, 708 F.2d 1217 (7th Cir.1983), are largely inapplicable to the evidence adduced at the trial in this case and, in particular, the circumstances of the principal plaintiff's psychiatric and physical illnesses; and that the $300,000.00 loss of consortium award is not unreasonable given those substantial sacrifices that Shirley Rosera has and will likely continue to make in the years ahead. They also observe that the $650,000.00 award for past and future pain, suffering, and disability is reasonable under the circumstances, representing as it does a 50% reduction of the amount requested in closing argument. Nonetheless, the plaintiffs acknowledge that the jury verdict of $120,000.00 for future medical costs is plainly excessive; thus, they offer two mistake-based explanations for the jury's behavior and signal their consent to some Court-inspired reduction of this particular award.

Of course, the troubling task now before the Court extends beyond the mere formulation of a simple hypothesis to explain one, discrete element of the verdict; as already noted, the Court must determine whether the paramount interests of justice compel an award of a new trial to the moving defendant. While the Court is not convinced that the apparent problems with the jury's liability assessments alone justify such a drastic remedy, it does feel strongly that, when viewed in the blinding light of the dollar figures awarded as damages, the jury's actions can only be characterized as the unfortunate results of passion and prejudice run amok.

At the outset, the Court records its substantial agreement with the tactical theory articulated by the plaintiffs in the opening paragraphs of their memorandum and pursued like a thesis to be proved on nearly every page thereafter—namely, that the present defendant, International Harvester Company, adopted the novel, yet potentially supremely effective strategy of building a case principally on cross-examination and selected readings from medical texts. Unfortunately for this party, the strategy was not plainly successful here, as evidenced by the jury's substantive findings on the liability questions and its compensatory awards in response to the damages queries. As a result, it now argues vociferously that justice can only be obtained through the vehicle of a new trial.

While the Court agrees with this conclusion, it states clearly that its ruling today is in no sense a "thirteenth-hour" award to a litigant whose trial strategy proved disappointing, nor, for that matter, is it a curious attempt to perform some perverse equity by affording a losing party a second chance before the bar. If International Harvester's litigation plan proved to be the only surprising or troubling development in this case, the present motion would be summarily denied.

As events now stand, however, the disquiet that that plan may have caused pales in comparison with the anxiety the Court presently feels with respect to the largesse of the jury's awards. Undeniably, those awards must be related in some substantive fashion and to some quantifiable degree to the jury's reactions to the several liability-type issues raised by the movant— most particular among them, the precise circumstances of Alfred C. Rosera's fall from the truck, the possibility of his own negligence in contributing to the accident, and the role of his employer, Schneider Transport, as a causative factor.

While the Court might well have resolved these critical matters in a manner different than that evidenced by the jury's verdict had the case been tried to the bench, the Court would be hard-pressed to justify today's announced remedy based exclusively on a finding that injustice could be avoided only through a new trial. And though the applicable standard here is plainly less stringent than the one to be addressed in the context of a motion for judgment notwithstanding the verdict, the Court simply cannot announce that the jury's substantive verdicts in the areas described above

are so contrary to the clear weight of the evidence that the considerable expenditure of time and resources attendant upon a new trial may be justified on this basis alone. Likewise, even if it were to admit error in its evidentiary ruling permitting testimony about the principal plaintiff's previous, consistent statements, the Court would be forced to conclude that its mistake was not so egregious as to necessitate an entirely new trial to-correct a manifest miscarriage of justice.

■ What the Court does find, however, is that the actual monetary awards made by the jury in the wake of its liability determinations are sufficiently excessive as to shock the conscience and to lead it to believe that they were prompted in large measure by sympathy, passion, or prejudice—emotional factors that have no proper role in the deliberative process.

■ In reaching this conclusion, the Court notes that the mere fact that the jury did not award the plaintiffs the total dollar figure requested by counsel—as it declined to do in determining Alfred C. Rosera's loss of earning capacity and past and future pain, suffering, and disability—that mere fact alone does not signal the reasonableness of the jury-assigned dollar figure. Where, as in this case, there is substantial evidence tending to impeach the principal plaintiff's damage claim—among that evidence, that he suffered from both pre- and post-accident psychiatric illnesses; that his family history was characterized by some schizophrenia or other mental disease; that treating physicians, who themselves were in apparent disagreement over the degree to which the accident caused Alfred C. Rosera's present illnesses, nonetheless documented his motives for malingering and secondary gain; and that he had been reliant for treatment to some extent on certain anti-psychotic drugs even before his fall—where all of this is made a part of the trial record, financial awards of the size made in this case for the loss of future earning capacity and past and future pain, suffering, and disability as a direct result of the accident simply cannot, to the Court's mind, be justified.

■ Similarly, the understandably difficult yet undeniably turbulent nature of the marital relationship between the plaintiffs simply fails to support the $300,000.00 loss of consortium award made by this jury; even under an optimistic projection for the future, this figure strikes the Court as inflated. Finally, and perhaps most tellingly, is the jury's wholly inexplicable handling of the damage claim for future medical expenses: While plaintiffs' counsel suggested an analysis that would generate an award of no more than $40,000.00, the jury tripled this figure and assigned a value of $120,000.00 to this singular element of total damages. Despite counsel's well-meaning if creative attempt to explain this calculation away, the Court construes it as only the most transparent of several indicia of a jury whose good intentions unfortunately prompted it to act out of sympathy for the plaintiffs and perhaps prejudice against the moving defendant. Under these circumstances, a second, presumably untainted trial, must be conducted.

To be sure, the Court appreciates fully the not-altogether-insubstantial expenditure of additional time and resources—judicial, prosecutorial, and defensive—that today's decision will surely necessitate. Indeed, as the discussion just completed reflects, the Court renders this order only after deliberate, painstaking consideration of the positions of the parties and of other options for disposition of this case short of a second trial.

■ Among the options the Court considered seriously was an order of remittitur, effectively conditioning the conduct of a new trial only upon the plaintiffs' failure to agree to a reduced judgment figure. However, it is unmistakably clear that remittitur may not be employed to cure what the Court views as an excessive verdict that resulted from passion, prejudice, or caprice. *Glazer v. Glazer*, 278 F.Supp. 476, 481 (E.D.La.1968); *Dorin v. Equitable Life Assurance Society*, 382 F.2d 73, 77 (7th Cir.1967); *see also* Moore's

*Federal Practice* ¶ 59.08[7] at 59–199; Wright and Miller *Federal Practice and Procedure* § 2815 at 103 ("[Remittiturs] are not proper if the verdict was the result of passion and prejudice, since prejudice may have infected the decision of the jury on liability, as well as on damages. In those instances a complete new trial is required"). Because the Court's present ruling is premised centrally upon its determination that the jury's verdict was, in part, the product of passion or prejudice, the remittitur option is not available.

Accordingly, while the Court feels compelled by the circumstances of this case and the dictates of law to grant the defendants' motion for a new trial, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, it will undertake all reasonable efforts to promote an especially prompt and efficient handling of this litigation to some final disposition. The paramount goal of today's ruling, however, remains the attainment of a just resolution of the several claims between the remaining parties to this lawsuit

## CONCLUSION

For the reasons set forth above, the Court hereby:

1) **DENIES** the companion motions of defendant Dart Transit Company for judgment notwithstanding the verdict or, in the alternative, for a new trial as moot;

2) **DENIES** the motion of defendant International Harvester Company for judgment notwithstanding the verdict, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure; and

3) **GRANTS** the motion of defendant International Harvester Company for a new trial, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure

Pursuant to the third of these rulings, the Court will conduct a pretrial conference at *9:00 a.m., on Friday, January 31, 1986,* at which counsel for the remaining parties to this litigation should appear, fully prepared to discuss their expectations for the new trial.